**Thomas F. HAGAN, Appellant,**

**v.**

**Benjamin D. BURCH, Appellee.**

**No. 4816.**

District of Columbia Court of Appeals.

Argued Nov. 25, 1969.

Decided Jan. 28, 1970.

James J. Bierbower, Washington, D. C., for appellant.

Mark P. Friedlander, Washington, D. C., for appellee.

Before FICKLING, GALLAGHER and NEBEKER, Associate Judges.

FICKLING, Associate Judge.

Appellee, a broker, brought an action to recover a real-estate commission from appellant, the seller. The sales contract provided that the broker was to be paid a commission by the seller. It also provided that the seller was "to execute and deliver

a good and sufficient special warranty deed" and that settlement was to be within 60 days.

At the time the contract was signed, the seller was married but separated from his wife. The broker had met the seller's wife about 2 years prior to the signing of the contract and, although the testimony is in dispute on this issue, it could be reasonably inferred that the broker knew of the existing marriage at the time the sales contract was entered into.[1]

About a week after the contract was signed, the broker asked the seller if he was "officially married" and, upon receiving an affirmative answer, told the seller that his, the seller's, wife's signature would be needed on the deed. The seller responded, "You are the broker, and it is your responsibility to get her signature." Apparently the broker did not reply to this statement and neither party sought to get the seller's wife's release of her dower interest—each, seemingly, thinking that it was the other's responsibility.

In any event, in a letter to the broker dated more than 30 days prior to settlement date, the seller stated:

Ben [the broker's Christian name], I am not going to sell the house until my divorce action is completed. I will open negotiations with you then if you are still interested. I feel this is the only course. At the time I had no idea of the "dower rights" technicality that exist [sic] in the District of Columbia. The property was purchased by me many years prior to my marriage.

I simply can't afford to take the risk at this time Ben and I hope that you understand. Would you please convey this to [the buyer]. * * *

The settlement appointment was then cancelled and the buyer sought other housing.

Upon the seller's refusal to pay the broker the commission allegedly due on the contract, this action was filed. The seller contended at trial that the broker breached his duty by failing to get the wife to release her dower interest. He also claimed that the above-quoted letter did not breach the sales contract but merely sought to delay settlement, which was acquiesced in by the buyer. He argued that after his divorce the buyer was not ready and willing to settle on the contract.

After hearing all the evidence, the trial court directed a verdict for the broker. The seller claims on appeal that the issues were ones of fact which should have been submitted to the jury. Upon thorough consideration, we affirm the judgment below.

Even if, as alleged in the seller's testimony, at the time of contracting the appellee agreed "as a broker [that] he would handle everything *under the contract*" (emphasis added), the trial court could not have reasonably inferred that this meant that the *broker* rather than the seller was to get the seller's wife's release. Under the contract, the seller agreed to sell the property free of encumbrances and thus it was his duty to get his wife's signature.[2]

Nor could the trial court have reasonably inferred that the seller's letter was anything but an anticipatory breach. The language of the letter quoted above is clear and unequivocal.

The seller's argument that the broker is not entitled to his commission because the buyer refused to consummate the sale is without merit. The buyer testified without contradiction that she was "ready, willing

1. By moving for a directed verdict, the broker admitted, for the purposes of the motion, the truth of seller's evidence with all reasonable inferences to be derived therefrom. 88 C.J.S. Trial § 255 (b) (1955). *See* American Marietta Co.

v. Griffin, D.C.App., 203 A.2d 710 (1964).

2. *See* Swanson v. Priest, 95 N.H. 64, 67, 58 A.2d 207, 209 (1948).

and able to purchase the property *under the terms of the contract."* (Emphasis supplied.)

After considering the evidence offered at trial, including all reasonable inferences to be derived therefrom in favor of the seller, we hold that a directed verdict was proper.[3]

Affirmed.

3. Appellant's other contentions are without merit.